UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TERRY AND NIDA LONATRO, ET                    CIVIL ACTION
AL.

VERSUS                                         NO: 11-357

ORLEANS LEVEE DISTRICT,                        SECTION: "J" (5)
SOUTHEASTERN LOUISIANA FLOOD
PROTECTION AUTHORITY-EAST,
and UNITED STATES ARMY,
CORPS OF ENGINEERS

**ORDER AND REASONS**

Before the Court is **Defendants Orleans Levee District and
Southeastern Louisiana Flood Protection Authority-East's Motion
to Dismiss (Rec. Doc. 19)**, and **Plaintiffs' Opposition (Rec. Doc.
28)**, on supporting memoranda, without oral argument.  Having
considered the motion and legal memoranda, the record, and the
applicable law, the Court finds that Defendants' Motion to
Dismiss (Rec. Doc. 19) should be DENIED.

**PROCEDURAL HISTORY AND BACKGROUND FACTS:**

The parties have submitted details of what appears to be a
long and complex journey for this case.  However, an abbreviated

1

version suffices for present purposes.  Plaintiffs own land on
Bellaire Drive in Orleans Parish.  In and abutting their
backyards is the levee/floodwall that runs alongside the 17th
Street Canal (the "Canal"), which is a man-made non-navigable
waterway.  After Hurricane Katrina, Defendant Orleans Levee
District ("OLD")[1] announced its intention to remove fences,
trees, and other items from portions of Plaintiffs' land either
abutting against or part of the levee (the "Levee") that runs
alongside the Canal.  The alleged purpose was the performance of
critical flood control work.  This was only the beginning of a
series of events that would lead to two separate state court
lawsuits, later to be consolidated into one case that was
eventually removed to this Court.

Prompting the initial suit in state court in 2008 was the
announcement of OLD's previously mentioned intentions.  The
landowners filed suit against OLD for injunctive relief and
compensation on July 7, 2008 (the "Demolition Suit").  The
request for preliminary injunction was denied; therefore, the

---

[1] Where the Court refers to Defendant OLD, it refers jointly to both
OLD, properly speaking, and the Southeast Louisiana Flood Protection
Authority-East ("SLFPA-E"), who have jointly filed the present motion to
dismiss.  SLFPA-E is the authorized representative for a hurricane protection
project in Orleans Parish, Rec. Doc. 18-1, at 3 n.3, and thus the Court refers
for the sake of convenience to "OLD" as encompassing these two related
Defendants.

U.S. Army Corps of Engineers (the "Corps") commenced the work pursuant to a right-of-entry granted by OLD.  Plaintiffs and Defendants filed cross-motions for summary judgment, arguing over the existence *vel non* of a legal servitude over the landowners' property.  The state district court granted the landowners' motion and denied the Defendants' motion in a judgment dated June 3, 2009.  The Defendants filed for a supervisory writ with the Louisiana Fourth Circuit Court of Appeal, which granted the writ, reversing and remanding to the trial court.  It found that OLD had a "St. Julien" servitude over the Canal levees.  The Louisiana Supreme Court denied the landowners' application for supervisory writs in March 2010.  After remand, the trial court never signed a judgment.

The second state court suit (the "Deep Soil Mixing Suit") was filed on January 5, 2011 due to OLD's announcement that it intended to perform extensive, critical, new strengthening and remediation flood control work on and around the landowners' property, to include the building of structures and "deep soil mixing," a process using a giant mixer to dig up to depths of 40 to 80 feet into the ground.  OLD and SLFPA-E granted the Corps a right-of-entry to perform the work.  In the Deep Soil Mixing Suit, the Plaintiffs sought preliminary and permanent injunctive

relief.  The Deep Soil Mixing Suit and the Demolition Suit were then consolidated.  By judgment dated January 24, 2011, the trial court denied the Plaintiffs' request for preliminary injunction pertaining to the Deep Soil Mixing Suit on grounds of the absence of a necessary party—the Corps.  On February 10, 2011, the landowners amended their petition to join the Corps as a party, and the Corps filed its Notice of Removal shortly thereafter.

Pursuant to the Notice of Removal, the consolidated case is before this Court.  All defendants filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), including the present Motion to Dismiss (Rec. Doc. 19).  The two issues presented in the present motion to dismiss are (1) whether this case should be dismissed as *res judicata* or under the "law of the case" doctrine, and (2) whether Defendants possess a <u>St. Julien</u> servitude that prevents Plaintiffs from stating a claim upon which relief may be granted.

**THE PARTIES' ARGUMENTS:**

Defendants' main argument is that Plaintiffs have no right of action because the Defendants hold a valid servitude over the entire 17th Street Canal Levee for maintenance purposes under the <u>St. Julien</u> doctrine.  They argue that the servitude gives them the authority to grant the Corps rights-of-entry to the Levee so

that it can carry out critical levee remediation to strengthen the flood control system.  The St. Julien doctrine allows a public or quasi-public corporation with expropriatory powers to acquire a servitude over another person's land where the landowner consents or acquiesces in the construction of facilities on the land for a public purpose.

OLD and SLFPA-E argue that a St. Julien servitude exists because the jurisprudential requirements are fulfilled:  (1) OLD is a public or quasi-public body with expropriatory powers; (2) the previous landowners have consented or acquiesced in construction of the Levee; and (3) the Levee is a facility constructed in the public interest.  They also argue that such a servitude is not limited to creation upon riparian lands and can be established even absent a writing.  They assert that this servitude over the Levee extends onto the Plaintiffs' properties on Bellaire Drive.  In failing to object, the original owners at the time of Levee construction acquiesced in the creation of the servitude.  Defendants point to the Louisiana Fourth Circuit supervisory writ opinion that affirmed the existence of the servitude, and maintain that it is not necessary that the present landowners consent to the servitude.  Further, the right to compensation is personal to the landowners at the time of levee

construction.  Thus, Plaintiffs have no right of action because it is undisputed that none of the Plaintiffs were the original landowners at the time of Levee construction and the servitude's establishment.

The Plaintiffs in opposition respond that OLD does not possess a valid servitude.  They criticize the Louisiana Fourth Circuit decision as a failure to follow binding Louisiana Supreme Court precedent, namely, Board of Commissioners v. Baron, 109 So. 2d 441 (La. 1959), which they claim establishes that levee districts do not possess a servitude over the non-riparian property fronting the 17th Street Canal.  They read Baron as stating that a levee district cannot compel landowners to remove improvements located adjacent to the Canal.  They argue that Baron is controlling and was the only existing authority at the time the Levee was built, and that therefore its existence proves the original landowners' lack of consent to the creation of a St. Julien servitude.  They also argue that Louisiana Revised Statutes section 38:225, a quasi-criminal statute forbidding certain landowners from placing obstructions within six feet of a levee, does not grant a levee servitude to OLD.  Nor does Louisiana Civil Code article 665 grant a levee servitude because that article only applies to navigable waterways.

6

Plaintiffs also argue that the St. Julien doctrine does not apply to the facts of this case.  They state that the only record evidence that is even pertinent to the issue of consent or acquiescence is the bare existence of the Levee on the landowners' property as of some undetermined date.  The former landowners' silence is not indicative of consent to a servitude. The existence of the Baron decision "on the books" was a declaration from the highest court of the State that no servitude then existed.  Additionally, the St. Julien doctrine cannot apply because of the absence of evidence of actual possession and use of the servitude by Defendants.  In the alternative, Plaintiffs' right to compensation is based on the fact that the creation of the servitude was a taking.  In addition to compensation, the Plaintiffs are owed damages from the ongoing construction work that forms the basis of the Deep Soil Mixing Suit.

Defendants also argue that because the Louisiana Fourth Circuit affirmed as lawful the Defendants' actions in granting the rights-of-entry under their servitude, Plaintiffs' claims must be dismissed.  They argue that the Louisiana appellate decision is a final judgment accorded the status of *res judicata*. Further, under the "law of the case" doctrine, because the Louisiana appellate court decided upon the St. Julien rule of

7

law, that decision should govern the current proceedings in federal court.

Plaintiffs respond that neither *res judicata* nor law of the case bar the present suit.  First, *res judicata* cannot be pled via a motion to dismiss.  Second, for the court to consider information "outside the complaint," it must treat the motion to dismiss as one for summary judgment.  Third, the requirements for *res judicata* are not met, in that (1) there is no final judgment; (2) the claims in the Deep Soil Mixing Suit did not exist at the time of the Louisiana appellate decision that granted OLD's supervisory writ application; and (3) even if *res judicata* would otherwise apply, exceptional circumstances justify relief from its application.  Further, the law of the case doctrine is inapplicable because its application is discretionary and should be refused here because the Louisiana Fourth Circuit decision was clearly erroneous and manifestly unjust in determining that a servitude existed.[2]

**DISCUSSION:**

**A.  Applicable Legal Standards**

**1.  Rule 12(b)(6) Motion to Dismiss Standard**

---

[2] This argument is actually raised in response to the *other* motion to dismiss (filed by the Corps), Rec. Doc. 27, at 18; but Plaintiffs' opposition to the other motion is incorporated into its opposition to the present motion to dismiss.  Rec. Doc. 28, at 2 n.2.

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005).  The allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, __U.S.__, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996).  The court is not, however, bound to accept as true legal conclusions couched as factual allegations.  Iqbal, 129 S. Ct. at 1949-50.

**2.  Erie Doctrine**

Plaintiffs sue for damages and for an injunction to prevent ongoing work that forms the basis of the Deep Soil Mixing Suit. Louisiana state law applies to these claims.  The Fifth Circuit set out the standard that binds this Court in its interpretation of Louisiana law:

> The substantive law of this case is the law of Louisiana. See Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). . . . To determine Louisiana law on the apportionment of recovery costs, this Court should first look to final decisions of the Louisiana Supreme Court. Id.
>
> * * *
>
> If the Louisiana Supreme Court has not ruled on this issue, then this Court must make an  "Erie guess" and "determine as best it can" what the Louisiana Supreme Court would decide. Krieser v. Hobbs, 166 F.3d 736, 738 (5th Cir.1999); id. (quoting Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co., 953 F.2d 985, 988 (5th Cir.1992)).
>
> In making an Erie guess in the absence of a ruling from the state's highest court, this Court may look to the decisions of intermediate appellate state courts for guidance. See Matheny v. Glen Falls Ins. Co., 152 F.3d 348, 354 (5th

Cir.1998). Intermediate appellate courts of Louisiana are "a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Labiche, 31 F.3d at 351 (quoting Commissioner v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967)).

Howe ex rel. Howe v. Scottsdale Ins. Co., 204 F.3d 624, 627 (5th Cir. 2000).  The Court now turns to the application of these standards to the arguments raised in the instant motion.

**B.  *Res Judicata***

Regarding the defense of *res judicata*, this Court looks to state law principles to determine the merits of the defense.   See 28 U.S.C. § 1738 (requiring that the judicial proceedings of the court of a state be given the same full faith and credit in federal court as they would have in the courts of that state). Louisiana's *res judicata* statute contains five elements:

[A] *second action* is precluded when all of the following are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or

> causes of action asserted in the second suit arose out of
> the transaction or occurrence that was the subject matter of
> the first litigation.

Burquieres v. Pollinque, 843 So. 2d 1049, 1053 (La. 2003)
(emphasis added).  The parties needlessly dispute the
applicability of several elements of *res judicata*.  In order for
a plea of *res judicata* to be logically argued, an underlying
"element" is the presence of two lawsuits.  There must be a final
judgment upon which the current *res judicata* defense is raised,
and the subsequent suit that is alleged to be barred.  See also
LA. REV. STAT. ANN. § 13:4231 (requiring the existence of a
"subsequent action"); Id. cmt. a (requiring the existence of a
"second action").  In this case, there is no "second suit."

This case has its genesis in Louisiana Civil District Court.
Initially, Case Number 08-6979 (the Demolition Suit) involved a
motion for summary judgment granted by the trial court, but the
Louisiana Fourth Circuit reversed and remanded.  The second case,
Case Number 11-0097 (the Deep Soil Mixing Suit), was filed, and
both cases were consolidated.  Before this consolidated case
could be disposed of, it was removed to this Court.  The mere
fact that the litigation is now within a different court system
does not mean that there is a subsequent suit.  The Court also

12

notes that generally, because *res judicata* is listed as an affirmative defense in Federal Rule 12(c), it cannot be raised as a contention via a motion to dismiss.  See Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 n.2 (5th Cir. 2005) ("We do observe that generally a res judicata contention cannot be brought in a motion to dismiss; it must be pleaded as an affirmative defense.").  The Court finds that this lawsuit may not be dismissed on grounds of *res judicata*.

**C.  Law of the Case**

Additionally, the "law of the case" doctrine does not bar this Court from entertaining the present case.  The Fifth Circuit has held that "a district court is not precluded by the law-of-the-case doctrine from reconsidering previous rulings on interlocutory orders such as summary judgment motions." Louisiana v. Guidry, 489 F.3d 692, 698 (5th Cir. 2007).  In Guidry, the federal appellate court found that the federal district court was free to consider a motion for summary judgment filed in federal court, even though that motion encompassed many of the arguments rejected by the state trial court in its judgment overruling a party's peremptory exceptions.  Id. However, the Guidry court noted that it did not address a situation identical to that presented in the case at bar:

> We are not here presented with a situation in which a
> federal court with removal jurisdiction encounters a
> Louisiana appellate court decision that would be considered
> a decision on appeal thus requiring us to decide whether it
> is entitled to law-of-the-case status in subsequent federal
> court proceedings. We express no opinion on such a
> situation.

Id. at 698 n.16.  Indeed, the application of the law of the case
doctrine to cases, like the present one, that move from state
court to federal court via removal has seen mixed results.  See
18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL
PRACTICE AND PROCEDURE, § 4478.4, at 781 (2d ed. 2002) ("Procedure
after removal is governed by federal law, defeating law of the
case even for such substance-entwined matters as the sufficiency
of a pleading . . . . Law of the case has indeed been recognized
after removal . . . . Some decisions, however, refuse to accord
law-of-the-case effect to rulings made before removal.").

The law of the case doctrine is not inviolate; it is of a
discretionary nature.  See Loumar, Inc. v. Smith, 698 F.2d 759,
762 (5th Cir. 1983).  It will not be applied when, among other
things, "the decision was clearly erroneous and would work a
manifest injustice." U.S. v. Davis, 609 F.3d 663, 693 (5th Cir.

14

2010).  In light of the following discussion, the Louisiana
appellate decision should not limit this court's inquiry because
(1) the facts of the Deep Soil Mixing Suit were not before it,
and (2) the Court cannot find the existence of a <u>St. Julien</u>
servitude on the record before it.  The Court chooses not to
apply the discretionary law of the case doctrine.

**D.  <u>St. Julien</u> Servitude**

The parties spend the bulk of their energy arguing over the
existence *vel non* of a "<u>St. Julien</u>" servitude.  The <u>St. Julien</u>
doctrine developed as a jurisprudential rule allowing the
creation of "servitudes by estoppel," namely, a public or quasi-
public corporation with expropriatory power can acquire a
servitude over land outside the expropriation process if the
landowner consents or acquiesces.  <u>Cancienne v. Lafourche Parish</u>
<u>Police Jury</u>, 423 So. 2d 662, 666 (La. App. 1st Cir. 1982).  The
Louisiana Supreme Court established this rule in 1883, <u>St. Julien</u>
<u>v. Morgan La. & Tex. R.R. Co.</u>, 35 La. Ann. 924 (La. 1883), and
then overruled <u>St. Julien</u> (prospectively only) in 1976, <u>Lake,</u>
<u>Inc. v. La. Power & Light Co.</u>, 330 So. 2d 914 (La. 1976).  In the
same year as the <u>Lake</u> decision, the Louisiana Legislature brought
the doctrine back via a statutory codification, which still
exists to this day.  <u>See</u> LA. REV. STAT. ANN. § 19:14.

15

A St. Julien servitude is established when (1) the appropriating body is a public or quasi-public body with powers of expropriation; (2) the appropriating body constructs a facility in the public interest; and (3) the landowner has consented or acquiesced to the taking.  Id. at 670.  The parties do not dispute the first and second elements, namely, that OLD is a public or quasi-public body with expropriatory powers, and that the Levee is a structure built in the public interest.  The parties dispute whether the Plaintiff-landowners gave their consent or acquiescence.  There are two issues:  (a) whether the pre-Lake jurisprudential doctrine or the post-Lake statutory rule applies, and (b) whether it provides OLD with a servitude over the 17th Street Canal Levee, namely, whether the landowner-consent element is present in this case.

**1.  Jurisprudential Rule Applicability**

The parties' memoranda do not address whether the alleged appropriations at issue occurred before or after 1976.  The Louisiana Third Circuit has found that where the relevant conduct occurred before the Lake decision, St. Julien provides the rule for decision.  Louisiana Power & Light Co. v. Holmes, 422 So. 2d 684, 686 (La. App. 3d Cir. 1982).  The Louisiana Fifth Circuit likewise found that the statutory codification of the St. Julien

doctrine does not apply, but rather the original St. Julien
jurisprudential requirements apply, where the conduct in question
occurred prior to the 1976 codification.  Howard v. La. Power &
Light Co., 583 So. 2d 503, 508-09 (La. App. 5th Cir. 1991).
Plaintiffs' complaint states that the 17th Street Canal was built
in the 1850s, but does not allege when the Levee was built.
Therefore, it is unclear on the record which formulation of the
St. Julien doctrine applies.

In any case, the St. Julien standard and the new statutory
codification are largely similar.  Both require consent or
acquiescence of the owner, and the existence of an entity with
expropriatory powers that takes possession of privately owned
property.  The statute expressly requires a construction of
facilities, which certainly exists in the present case:  a levee
is a construction.  The statutory codification also includes a
requirement that the expropriating entity take possession "in
good faith believing it ha[s] authority to do so."  LA. REV. STAT.
ANN. § 19:14.  Therefore, arguably, conduct subject to the post-
1976 statutory codification has an extra appendage of analysis,
namely, whether the appropriating entity attempts to establish
the servitude in good faith.  However, the Court need not decide
whether the post-1976 law applies—and therefore the extra "good

faith" requirement applies—because as discussed below, there is insufficient evidence under the pre-1976 law of a <u>St. Julien</u> servitude in this case.

### 2.   Consent/Acquiescence Element

The Plaintiffs argue that they did not consent to a servitude; thus, a <u>St. Julien</u> servitude does not exist.  They argue that the bare existence of a levee on their property does not prove their consent.  They further argue that consent must be express, while Defendants argue that acquiescence demonstrates consent, which is present in this case.  The issue, however, is not whether *these* Plaintiffs consented or acquiesced.  It is whether the *original* landowners at the time of the levee construction consented or acquiesced.  Where the owner at the time of construction has consented or acquiesced, subsequent owners take the property subject to the servitude.  <u>Weigand v. Asplundh Tree Experts</u>, 577 So. 2d 125, 127 (La. App. 1st Cir. 1991) (citing to <u>Rogers v. La. Power & Light Co.</u>, 391 So. 2d 30, 34 (La. App. 3d Cir. 1980)).

Notably, this crucial element of <u>St. Julien</u> is in the alternative:  either consent *or* acquiescence is sufficient.  Defendant cites <u>Holmes,</u> 422 So. 2d at 686, in which the Louisiana Third Circuit defined the third element of <u>St. Julien</u> as either

consent or acquiescence in the construction of the public-purpose
facility.  The Louisiana First Circuit also used the same
"consent or acquiescence" test.  Cancienne, 423 So. 2d at 667.
Indeed, when the Louisiana Supreme Court in Lake prospectively
overruled St. Julien, its discussion of the St. Julien case shows
that acquiescence was the nature of the St. Julien decision.
Lake characterized the St. Julien decision as one based on the
landowner's having "practically assisted the defendant in the
completion of construction" of a railroad, and then becoming
disenchanted; the landowner was not permitted to reclaim the
property free of the servitude that he had allowed to be imposed.
Lake, 330 So. 2d at 915-16 (citing to St. Julien, 35 La. Ann.
924).  The Louisiana Supreme Court in Lake called it the "St.
Julien doctrine of acquiescence."  Id. at 916.  The notion of
acquiescence was also described as the "presumed consent" of the
landowner to "what an expropriation suit would have compelled him
to yield."  Id. (quoting John T. Moore Planting Co. v. Morgan's
La. & T. R.R. & S.S. Co., 53 So. 22, 33 (La. 1908)).

    As shown through Louisiana jurisprudence, the issue of what
is necessary to constitute consent or acquiescence is a fact-
sensitive one.  Defendants cite Holmes, 422 So. 2d 684, for the
proposition that acquiescence is present whenever the landowner

fails to complain about the location of the public structure.
However, this is not a completely accurate characterization of
the case.  In Holmes, defendants purchased a vacant lot in 1977;
the plaintiff had electric lines crossing the property at least
as early as 1950.  Id. at 686.  Defendant-landowners built a
storeroom immediately beneath the electric lines, and plaintiff
sued for a declaration that it possessed a servitude.  Id.  The
court held that a servitude existed based on not only the fact
that the plaintiff's superintendent had never received complaints
about the location of the electric lines, but also that the
defendants' grandparents had *expressly consented* to the
construction of the power lines in or about 1950.  Id. at 687.
In the present case, proof of a servitude will certainly not
require express consent, but may necessitate more than just the
mere absence of complaints by the original landowners.

In Campbell v. Louisiana Intrastate Gas Corp., 528 So. 2d
626, 627 (La. App. 2d Cir. 1988), the plaintiff landowner sued
for trespass a private utility company that entered the land to
rework an underground gas pipeline.  The pipeline had been built
in the late 1920s, and the plaintiff bought the land in 1943.
Id.  He knew that the pipeline extended across the property at
the time of purchase and later received royalties from the sale

of gas marketed from wells on his property through the pipeline.
Id.  The appellate court found that the trial court's awarding of
trespass damages was erroneous; however, it did not expressly
hold that a St. Julien servitude existed.  Id. at 629.  Its
finding was based on not only the landowner's failure to object
between 1943 and 1984, but also upon the plaintiff's receipt of
the benefit of gas marketed through the pipeline.  Id.  Thus,
although failure to object to the construction was, again, a key
element in Campbell, the finding of acquiescence was buttressed
by the fact that the plaintiff monetarily benefitted from the
defendant's right of access.  This situation is distinguishable
from the present case, in which the parties do not point to any
notable monetary benefit to Plaintiffs, derived from the Levee's
existence.

    A little closer to a "failure to object only" finding of
acquiescence was the decision in Weigand, 577 So. 2d 125.  In
Weigand, the plaintiffs sued for trespass when the defendant cut
the top one-third of several cypress trees that were either
immediately adjacent to or on the plaintiffs' property.  Id. at
125-26.  The electric company had hired the defendant to cut the
trees because the trees had grown into the power lines over which
the electric company allegedly held a servitude.  Id. at 126.

21

The court held that the electric company held a servitude over
the plaintiffs' property based on the evidence presented, which
demonstrated acquiescence:

> No testimony was presented to show that [the previous
> landowner] objected to the construction of the electrical
> lines. The testimony presented did reflect that electrical
> power supplied through the lines has been uninterrupted
> since 1950, minor power outages excepted. The right of [the
> electric company] to the servitude has been apparently
> unquestioned. In fact, the previous owner of St. George
> Plantation testified that he allowed [the electric company]
> to trim the trees extending into the power lines, noting
> that the power lines were in existence when he planted the
> trees.

Id. at 127.  It appears that the court's finding of acquiescence
was indeed based on a failure of the original landowner to
object.  However, there was evidence adduced to show this failure
to object:  the previous owner testified that he had permitted
the trimming of the trees.  Id.

In contrast, Defendants asserts acquiescence based on the
mere existence of the Levee, without adducing any other evidence
that might be introduced at a later stage in this litigation.

Although this Court could consider other evidence through converting this motion to dismiss into a summary judgment motion, the Court chooses in its discretion to refuse to so convert the motion.  Defendants may file a motion for summary judgment after there has been sufficient time for discovery.  <u>See</u> FED. R. CIV. P. 12(d) (only permitting matters outside the pleadings to be presented to the court, if the motion is treated as one for summary judgment, at which time the court must give the parties a reasonable opportunity to present pertinent material).  The Court finds that the bare existence of the Levee, without the introduction of any evidence, is insufficient to demonstrate that the previous landowners acquiesced in the creation of a <u>St. Julien</u> servitude.

Indeed, there are Louisiana cases showing that silence is not deemed acquiescence.  The appellate court in <u>Howard</u>, 583 So. 2d at 509, affirmed the trial court's finding that there was no servitude, where the appellees alleged that they did not discover the takings until years after they occurred and where the appellants contended that silence was deemed acquiescence.  In <u>South Central Bell Telephone Co. v. Eisman</u>, 430 So. 2d 256, 259 (La. App. 5th Cir. 1983), where the husband consented to a servitude contract permitting the telephone company to construct

23

an underground conduit, and where the wife did not sign the
agreement, the court found that because the wife neither signed
the contract nor later, by her actions, confirmed the project,
St. Julien was inapplicable.  A Louisiana Attorney General
opinion cited by Defendants advised that the Lake Borgne Basin
Levee District had acquired a St. Julien servitude over its
levees with the right to construct, operate, and repair the
levees, but did so without any analysis of the consent issue.
La. Atty. Gen. Op. No. 06-0168 ("*[A]ssuming the acquiescence or
consent* of the property owners, the levee district has acquired
the rights of use necessary . . . .") (emphasis added).

     One may argue that consent or acquiescence should be
presumed.  Indeed, there are Louisiana appellate cases that cite
to old jurisprudence presuming a landowner's consent to that
which an expropriation suit would have compelled him to yield.
Sellers v. St. Charles Parish, 655 So. 2d 367, 370 (La. App. 5th
Cir. 1995); Vial v. S. Cent. Bell Tel. Co., 423 So. 2d 1233, 1237
(La. App. 5th Cir. 1982) (citing to John T. Moore Planting Co.,
53 So. at 33).  However, this does not mean that Plaintiffs will
not have the opportunity to rebut the presumption that the
original landowners at the time of the taking consented to the
taking.  Plaintiffs in their complaint were not required to plead

                               24

facts proving that they will win, but only enough to show a claim that is plausible on its face.  See Iqbal, 129 S. Ct. at 1949. Additionally, the court in John T. Moore Planting Co. only held that there is a presumption of consent to whatever could have been compelled by an expropriation suit, John T. Moore Planting Co., 53 So. at 33, but to prove what would have been compelled under such a suit, Plaintiffs would be entitled to an expropriation trial.  See, e.g., LA. REV. STAT. ANN. § 19:4 (providing for trial of expropriation cases); Ouachita Parish Sch. Bd. v. Clark, 1 So. 2d 54, 57 (La. 1941) ("[T]he determination of the question as to the necessity for expropriation of property is a judicial function.").  The Court holds that Plaintiffs have pled sufficiently to avoid dismissal of their case based on an alleged St. Julien servitude, in that Defendants have not—at least at this juncture—proven the requisite consent or acquiescence to a St. Julien servitude.

**3.  Personal Nature of Action for Compensation**

Defendants also argue that the right of action for compensation is personal to the original landowner at the time the servitude was created.  See Brooks v. New Orleans Pub. Serv., Inc., 370 So. 2d 686, 690 (La App. 4th Cir. 1979) ("Without an express transfer, one who buys property subject to a St. Julien

appropriation has no right of action."). This does not warrant dismissal of Plaintiffs' suit. Even if the land entailing and perhaps immediately adjacent to the Levee is subject to a servitude in favor of OLD, the extent of this servitude into Plaintiffs' backyards is a disputed fact question. A <u>St. Julien</u> servitude such as the alleged one in this case is a personal servitude of right of use. <u>Holmes</u>, 422 So. 2d at 688; La. Atty. Gen. Op. No. 06-0168. It is true that the owner of the servient estate has a duty to keep his estate fit for the purposes of the servitude. <u>Holmes</u>, 422 So. 2d at 688. The personal servitude of right of use confers in favor of its owner a specified use of the estate that is less than *full* enjoyment, La. Civ. Code art. 639. The extent of a servitude is described by the Louisiana Civil Code as follows:

> A right of use includes the rights contemplated or necessary to enjoyment at the time of its creation as well as rights that may later become necessary, provided that a greater burden is not imposed on the property unless otherwise stipulated in the title.

La. Civ. Code art. 642. However, the Court finds that it is improper to determine the extent of the servitude on a motion to dismiss. <u>Holmes</u> demonstrates that the extent of the duty of

26

landowners to maintain their land in a condition suitable for
purposes of the servitude is a fact question.  <u>Holmes</u>, 422 So. 2d
at 688-89 (describing the testimony underlying the finding that a
particular building interfered with maintenance of the electric
lines).  Thus, if Defendants have acted beyond the right of use
contained in the alleged servitude, Plaintiffs may state a claim.
<u>See</u> <u>Vial</u>, 423 So. 2d at 1237 (where constructions were placed
outside the servitude, <u>St. Julien</u> doctrine did not apply to
excuse the defendant's trespass).

Given that Defendants cannot prove that Plaintiffs' claims
are not plausible on their face, in that a <u>St. Julien</u> servitude
has not been demonstrated to the Court, the Court cannot dismiss
Plaintiffs' claim for compensation.  While true that the right to
compensation for a <u>St. Julien</u> servitude is personal to the
original landowner, no <u>St. Julien</u> servitude has been
demonstrated.  Further, the extent of the alleged servitude is
disputed.

**E.  Effect of Article 665 Servitude and <u>Baron</u>**

Plaintiffs raise the <u>Board of Commissioners v. Baron</u>, 109
So. 2d 441 (La. 1959) case to argue that it negates the
application of the <u>St. Julien</u> doctrine.  However, Plaintiffs
misconstrue <u>Baron</u>.  <u>Baron</u> held that the levee district did not

have a servitude over the land adjacent to the 17th Street Canal
*under Civil Code Article 665*.  <u>Baron</u>, 109 So. 2d 441. The
rationale was that the Article 665 servitude only applies to
lands that were riparian at the time they were separated from the
public domain.  <u>Id.</u> at 443.  Because there was no showing that
the land adjacent to the 17th Street Canal was riparian at the
time of separation from the public domain, there was no Article
665 servitude.  <u>Id.</u> at 444.[3]

Importantly, <u>Baron</u> only held that the Canal was not burdened
by a servitude pursuant to Article 665.  <u>See</u> <u>Baron</u>, 109 So. 2d at
443 ("The test to determine whether land not adjacent to a
navigable stream is burdened *by the servitude imposed by Article
665 for the making and repairing of levees* . . . .") (emphasis
added).  At its lowest possible breadth, the decision only
removes from a landowner's potential arguments the proposition
that there is an Article 665 servitude.  At its highest possible
breadth, <u>Baron</u> failed to account for the <u>St. Julien</u> doctrine
altogether, which was extant at the time of the <u>Baron</u> decision.

---

[3] Article 665 was amended in 2006 to provide a servitude that would
cover the facts of this case by providing that the servitude exists on
property necessary for the building and repair of levees.  LA. CIV. CODE art.
665 (amended by Acts 2006, No. 776, § 1).  However, the parties do not dispute
that the 2006 amendment does not apply to Plaintiffs' claims because the
amendment does not apply retroactively to the alleged pre-amendment
construction of the Levee.

28

However, the Court has already found insufficient evidence to grant the motion to dismiss because of insufficient evidence of landowner acquiescence.  The Court need not decide whether Defendants have an Article 665 servitude because Defendant does not raise this as an argument.[4]

Finally, the Court notes that this is not the first time this set of facts has been before this Court.  See Sargent v. U.S., 2008 WL 3154761 (E.D. La. Aug. 5, 2008) (denying a suit for preliminary injunction to enjoin removal of trees and fences by a similarly situated group of plaintiffs).  The Court has stated that the actual levee toe location has been disputed.  Id. at *4. Thus, even if there had been sufficient evidence in the record for the Court to hold that a St. Julien servitude exists in favor of Defendants, this would be insufficient to dismiss the present case because the complaint alleges that Defendants enabled the

---

[4] However, the Court notes in passing that Article 665 has been held only to apply to navigable water bodies.  Delaune v. Board of Comm'rs, 87 So. 2d 749, 752 (La. 1956) ("This Article, in conformity with its language, has been found to be applicable only to navigable rivers or streams.").  In order for land that currently does not border a navigable water body to be subject to the Article 665 servitude, it must be shown that the land was of riparian origin at the time of separation from the public domain.  Jeanerette Lumber & Shingle Co. v. Bd. of Comm'rs, 187 So. 2d 715, 719 (La. 1966).  Under this jurisprudence, because it is apparently undisputed that the 17th Street Canal is non-navigable, it would have to be shown to have been navigable at the time of "separation from the public domain," which seems highly unlikely given its nature as a drainage ditch.  Further, although Defendants briefly cite another Louisiana statute that provides for a six-foot, no-build zone on land abutting levees, see LA. REV. STAT. ANN. § 38:225, Defendants do not argue that this statute creates a servitude.  Rec. Doc. 19-1, at 5 n.7.  Therefore, the Court makes no finding based upon this statute.

29

removal of items from Plaintiffs' property six feet from the "theoretical" toe of the Levee.  Rec. Doc. 1-1, at 16.  In other words, the extent of any purported servitude onto Plaintiffs' property is far from certain.

For the foregoing reasons, **IT IS ORDERED** that Defendants' **Motion to Dismiss (Rec. Doc. 19)** is **DENIED.**

New Orleans, Louisiana this 10th day of August, 2011.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE