UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| TERRY AND NIDA LONATRO, ET AL. | CIVIL ACTION |
|---|---|
| VERSUS | NO: 11-357 |
| ORLEANS LEVEE DISTRICT, SOUTHEASTERN LOUISIANA FLOOD PROTECTION AUTHORITY-EAST, and UNITED STATES ARMY, CORPS OF ENGINEERS | SECTION: "J" (5) |

**ORDER AND REASONS**

Before the Court are **Defendant United States of America's[1]**
**Motion to Dismiss or Transfer (Rec. Doc. 18)**, **Plaintiffs'**
**Opposition (Rec. Doc. 27)**, and **Defendant USA's Reply (Rec. Doc.**
**34)**, on supporting memoranda without oral argument.  All
defendants in this case filed motions to dismiss.  The Court in
its Order and Reasons (Rec. Doc. 31) denied the Orleans Levee
District (the "OLD") and Southeastern Louisiana Flood Protection
Authority-East ("SLFPA-E")'s motion to dismiss (Rec. Doc. 19).

---

[1] This Defendant brings its motion on behalf of the United States Army
Corps of Engineers.  To the extent the Court refers to the Corps as a
defendant, it refers to the USA, properly speaking.

Thus, the USA's motion to dismiss is now before this Court. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that Defendant's Motion to Dismiss (Rec. Doc. 18) should be GRANTED in part and DENIED in part.

### PROCEDURAL HISTORY AND BACKGROUND FACTS[2]

Plaintiffs constitute a group of residents who live on Bellaire Drive in Orleans Parish.  Their backyards include the levee/floodwall that runs alongside the 17th Street Canal (the "Canal").  Following Hurricane Katrina, Defendant United States Army Corps of Engineers (the "Corps") deemed it necessary to strengthen the Canal's walls to ensure that the walls are capable of accommodating pass rain and storm water.  As a result, Defendant OLD announced its plan to remove fences, trees, and other items from areas of Plaintiffs' land that either abutted or were part of the levee.

The first round of litigation (the "Demolition Suit") began on July 2, 2008 when Plaintiffs filed a class action petition in Orleans Parish Civil District Court.  In their petition, Plaintiffs sought injunctive relief, including a temporary

---

[2] The background of this case is further discussed in the Court's Order and Reasons denying the OLD's motion to dismiss.  Rec. Doc. 31.

restraining order, and damages against the OLD and SLFPA-E.  The matter was assigned to Judge Reese, who denied their request for a temporary restraining order in a judgment entered July 6, 2008. Plaintiffs and the defendants then filed cross-motions for summary judgment.  The court granted partial summary judgment for Plaintiffs in a judgment dated June 3, 2009.  The defendants then applied for and obtained supervisory writs to the Louisiana Fourth Circuit Court of Appeal.  The Fourth Circuit reversed the trial court's grant of partial summary judgment and remanded to the trial court.  The plaintiff landowners' petition for writ of certiorari was denied by the Louisiana Supreme Court on March 12, 2010.

The second round of litigation (the "Deep Soil Mixing Suit") began on January 5, 2011 with Plaintiffs' filing of a new petition in Orleans Parish Civil District Court seeking preliminary and permanent injunctive relief.  The lawsuit named the OLD and SLFPA-E as defendants and sought to enjoin their grant of another right of entry to the Corps to perform new remediation flood control work on and around the landowners' properties.  In a judgment dated January 24, 2011, the trial court denied the Plaintiffs' request for a temporary restraining order based on a finding that the Corps was a necessary party.

3

The Deep Soil Mixing Suit and the Demolition Suit were then consolidated.  On February 10, 2011, the landowners amended their petition to join the Corps as a defendant, which prompted the Corps's subsequent removal of the consolidated case to federal district court.

Pursuant to the notice of removal, the consolidated case is before this Court.  All defendants filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  The present motion invokes Rule 12(b)(1).

**THE PARTIES' ARGUMENTS**

The Corps's motion raises jurisdictional arguments under Rule 12(b)(1), and *res judicata*, "law of the case," and standing arguments under Rule 12(b)(6).  The Court now summarizes these arguments in turn.

**A.  Jurisdictional Arguments**

The Corps argues that the Court lacks subject matter jurisdiction over the Plaintiffs' tort and uncompensated takings claims.  In support of this argument, Defendant points out that as a sovereign, the United States must consent to be sued and such consent is a prerequisite for jurisdiction.  Based on this principle, Defendant avers that sovereign immunity extends to federal government agencies, such as the Corps.  Plaintiffs'

4

trespass claims against the Corps sound in tort.  The Federal Tort Claims Act (FTCA), the applicable waiver of sovereign immunity, states that a cause of action against the United States for money damages cannot be instituted unless the individuals bringing the claims have first presented the claims to the proper federal agency and their claims have been finally denied by the agency.  The Corps then asserts that because Plaintiffs have failed to exhaust administrative remedies, the Court lacks subject matter jurisdiction over Plaintiffs' tortious trespass claims.

In response to this argument, Plaintiffs argue that they need not have pursued administrative remedies because they have not brought a tort claim against the Corps.  They also point out that while the FTCA contemplates a claim for money damages against the federal government for tortious conduct, their claims in this case are based upon the levee districts' liability for just compensation.  Therefore, Plaintiffs were not required to exhaust administrative remedies because they do not have an independent tort claim against the Corps.

Defendant's other jurisdictional argument is that under the Little Tucker doctrine, the Court lacks jurisdiction over Plaintiffs' Takings Clause claims.  Under the Tucker Act, the

district courts have concurrent jurisdiction with the Court of
Federal Claims over claims included in the statutory provisions
and whose alleged value is $10,000 or less.  With this standard
in mind, the Corps argues that the Plaintiffs' failure to specify
the amount of damages they seek constitutes a failure on their
part to meet their burden of establishing subject matter
jurisdiction.  Therefore, the Court lacks jurisdiction over
Plaintiffs' claims for just compensation under the Takings
Clause.  These claims can only be brought in the Court of Federal
Claims.

Plaintiffs counterargue that the Court possesses
jurisdiction over this case under the Quiet Title Act.  They
argue that pursuant to this statute, district courts have
exclusive jurisdiction over civil actions under § 2409a to quiet
title to an interest in property or real estate when that
interest is claimed by the United States.  Plaintiffs
characterize their claims as within the scope of the Act:  in
addition to seeking a declaration that the Corps has no servitude
or right to enter their properties, they have also asserted
monetary just compensation claims and have suggested that the
properties should be formally expropriated.  With respect to
Plaintiffs' argument for the application of the Quiet Title Act,

the Corps replies that the Act is not applicable because the Corps does not claim an interest in the Bellaire Drive properties—only a right of entry granted by the OLD.

Plaintiffs also assert that the Court of Federal Claims lacks jurisdiction over their just compensation claims.  The Court of Federal Claims's jurisdiction is limited to monetary claims against the United States, which may be founded on the federal Constitution, federal statutes or regulations, or federal contracts.  Thus, the Court of Federal Claims lacks jurisdiction over Plaintiffs' state law takings claims against state governmental authorities.  Furthermore, that court has jurisdiction only where the taking is attributable to the United States.  Plaintiffs argue that they have not alleged that the United States was the party responsible for the takings; thus their just compensation claims should not be heard in the Court of Federal Claims.

Plaintiffs also argue that the Court can exercise supplemental jurisdiction over their constitutional claims against the levee districts via supplemental jurisdiction. Also, this Court would retain the power to adjudicate state law claims or to remand the case to state court even if the Corps were dismissed from the suit.

7

**B.  *Res Judicata* and "Law of the Case" Arguments**

The Corps argues that the Plaintiffs' claims are barred as *res judicata* or by the "law of the case" doctrine.  In support of its *res judicata* defense, the Corps avers that all of the named Plaintiffs in the current suit, except for one, were also included in the purported class of plaintiffs when the action was filed in state court.  Also, although the Corps was not a party to the Demolition Suit, the rights and responsibilities of the Corps and the OLD were unified in interest.  Thus, the identity-of-the-parties requirement is met, and the Louisiana Fourth Circuit decision in favor of the OLD binds the Plaintiffs and the Corps in the present case.  Defendant also argues that the "law of the case" doctrine should apply.  The "law of the case" doctrine provides that when a court decides on a rule of law, that decision should govern the same issue in subsequent stages of the case.  The Corps argues that the Fourth Circuit decision should be applied as law of the case to defeat Plaintiffs' claims.

Plaintiffs respond that *res judicata*, collateral estoppel, and the "law of the case" doctrine do not preclude their claims against the Corps.  First, the two suits do not involve identical parties.  The Corps was not joined as a party to this case until

long after the Fourth Circuit's 2009 ruling.  Second, there was

no final judgment in the Demolition Suit.  Third, collateral

estoppel is not applicable to any of the claims made in the

amended petition because a final judgment was not rendered in the

Demolition Suit and the Corps did not become a party until 2011.

Furthermore, the issues in the Deep Soil Mixing Suit are

different from the issues that were brought before the Fourth

Circuit in the Demolition Suit.  Lastly, the "law of the case"

doctrine, which is a discretionary guide, is inapplicable to this

case.  The Fourth Circuit decision was erroneous; the court

improperly determined that a servitude existed.  Additionally,

the issues and evidence raised in the Demolition Suit were

different from those in this case in its present procedural

posture.

**C.  Standing Argument**

     The Corps also argues that Plaintiffs lack standing to bring

their claims.  The Fourth Circuit held that the OLD has a

servitude over the 17th Street Canal levee under the <u>St. Julien</u>

doctrine and that the OLD had the right to clear obstructions

from the levee.  Because the 17th Street Canal was constructed

decades ago, to the extent that the creation of the <u>St. Julien</u>

servitude was a taking, it occurred long ago.  Therefore, the

Louisiana court's decision observed that the right to compensation was personal to the owners of the properties when the levee was constructed and that none of the present landowners owned the properties at that time.  Consequently, the current landowners lack standing to bring takings claims.

**DISCUSSION**

**A.  Legal Standard**

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005).  The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss.  Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 762 (5th Cir. 2011).  The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6).  United States v. City of New Orleans, No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, __U.S.__, 129 S. Ct.

1937, 1949 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. <u>Lormand v. U.S. Unwired, Inc</u>., 565 F.3d 228, 232-33 (5th Cir. 2009); <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996).  The court is not, however, bound to accept as true legal conclusions couched as factual allegations. <u>Iqbal</u>, 129 S. Ct. at 1949-50.

**B.  Subject Matter Jurisdiction**

   **1.  Jurisdiction Under the Quiet Title Act**

   Federal law provides that district courts "have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States."  28 U.S.C. § 1346(f). Thus, where a suit is brought pursuant to section 2409a, which is the "Quiet Title Act" ("QTA"), the district court has subject matter jurisdiction.  The QTA provides a mechanism for suit against the United States "to adjudicate a disputed title to real property in which the United States claims an interest."  28

11

U.S.C. § 2409a(a).  Thus, there are two elements required for the QTA to apply, and thus subject matter jurisdiction based on the QTA to exist:  (1) there must be a disputed title to real property, and (2) the United States must claim an interest in the property at issue.  <u>Leisnoi, Inc. v. U.S.</u>, 170 F.3d 1188, 1191 (9th Cir. 1999).

### a.  Disputed Title to Real Property

The first element, that there be a disputed title to real property, is clearly present.  The Corps and Plaintiffs disagree as to whether the Corps has the right to have entered the Plaintiffs' backyards and performed removal and construction activities.  The fact that Plaintiffs' dispute with the Corps is over a servitude, rather than ownership in full, does not prevent the action from being a dispute as to "title to real property" under the QTA.  <u>See</u> <u>Sch. Bd. of Avoyelles Parish v. U.S. Dept. of Interior</u>, 647 F.3d 570, 580 (5th Cir. 2011) (stating that the "legislative history of the QTA 'indicates that Congress intended easements to be included in the real property rights adjudicated in a quiet title action'") (citations omitted); <u>Knapp v. U.S.</u>, 636 F.2d 279, 282 (10th Cir. 1980) ("Whether the interest claimed amounts to legal title in the United States is irrelevant if it constitutes a cloud on the plaintiffs' title.").

The Court previously found in its Order and Reasons (Rec. Doc. 31) denying the OLD's motion to dismiss that there is insufficient evidence of a servitude in favor of the OLD, at this Rule 12(b) stage of litigation.  However, if there was a servitude, the outcome for the present motion would be different. If there was a servitude in favor of the OLD, the taking would have occurred years ago.  With such a finding, there would be no dispute as to title, and thus jurisdiction under the QTA would not lie.  However, for the very reason that there is insufficient evidence of a servitude, the Plaintiffs' suit is one disputing title to real property, and thus the first element required for QTA jurisdiction is present.

### b.  Claim of Interest

The second requirement, that the Corps claim an interest in the landowners' Bellaire Drive properties, is less straightforward in this case.  The text of the QTA does not define what it means for the United States to "claim[] an interest."  See 28 U.S.C. § 2409a(a).  The Corps argues that it has made no such claim because it is merely making an authorized use of the properties due to the right of entry granted by the OLD.  In support, the Corps cites Federal Credit Union v. Walker, 198 F.3d 372, 377 n.5 (2d Cir. 1999), in which the court

13

concluded that the United States did not claim an interest in real property where the controversy was contractual in nature, namely, a dispute regarding a lease agreement.  However, <u>Walker</u> does not address the situation in the present case in which the Corps is allegedly entering upon and using Plaintiffs' land under a right of entry granted by the alleged servitude holder, the OLD.  Using the plain meaning of the phrase "claim an interest," the OLD clearly meets this description because it asserts a servitude over the land immediately adjacent to Plaintiffs' backyards.  The question is:  is the Corps likewise asserting an interest in the levee and adjacent land through performing construction work that it was invited to perform by an alleged servitude holder?  The answer lies in how one characterizes the Corps's entry upon the land vis-a-vis the OLD, which purported to authorize such entry.  The parties do not cite any cases directly on point.

As previously noted, the text of the QTA does not define a "claim of interest" by the United States.  However, one subsection of the QTA suggests that the Government need not claim an "interest," but that a mere claim of a "right" will invoke the QTA.  <u>See</u> 28 U.S.C. § 2409a(d) (requiring the plaintiff in his complaint to "set forth with particularity . . . the *right*,

title, *or interest* claimed by the United States) (emphasis added).  Because this subsection suggests that the Government's claim to a "right" in the subject property invokes the QTA, the Corps's claim of a *right* of entry onto the Bellaire Drive properties may invoke the QTA.  However, this cited QTA subsection merely imposes a pleading requirement on the plaintiff, whereas the subsection defining the cause of action simply refers to an "interest" claimed by the Government.  <u>Id.</u> § 2409a(a).  Thus, an ambiguity exists as to the meaning of a "claim of interest."

To resolve this ambiguity, resort is made to legislative history to ascertain Congress's intent.  <u>See</u> <u>In re Condor Ins. Ltd.</u>, 601 F.3d 319, 321 (5th Cir. 2010) (stating that where statutory language is ambiguous, the court turns to statutory history).  The House report accompanying the bill cited the common-law history of quiet title actions, in which a plaintiff could sue "to remove a cloud on title" regarding "an outstanding *deed or other interest*."  H.R. REP. NO. 92-1559, at 4 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4547, 4551 (emphasis added).  At the same time, the report indicated that "[p]erhaps [the] most common application of the proposed statute would be in boundary disputes" between the Government and the putative landowner.  <u>Id.</u>

15

at 5, 4551-52.  However, much more than boundary disputes were contemplated by the drafters.  A specific example in the report is that where the United States is a lessee, and the title of the Government's lessor is adjudicated to be invalid, the United States could elect to continue its lease with the true owner. Id. at 8, 4555.  Such a situation is analogous to the present case.  In the lease scenario, the QTA plaintiff sues the Government, which has obtained its right of occupancy from the lessor, whose title is at issue.  In the present case, the Plaintiffs sue the Corps, which has obtained its right of entry through the levee district, whose title (servitude) is at issue. In a later House report accompanying a statute-of-limitations amendment, there is a reference to federal claims of *ownership*,[3] but the overall tenor of the legislative history suggests that the Corps's claim of a right of entry via a levee district's authorization of use of its servitude is a "claimed interest" satisfying the second element of the QTA.

---

[3] Specifically, with regard to the running of the statute of limitations against a state claiming a property interest adverse to the United States, "the federal use, occupancy, or improvement must have been of such a nature as to reasonably put a state on notice of a federal claim of ownership. The federal government must have acted as if it were owner of the land."  H.R. REP. NO. 99-924, at 2 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5643, 5645.

16

This interpretation of the QTA is supported by looking at
the meaning of "claiming an interest" under the general quiet
title action at common law.   Courts have held that in the
absence of federal precedent interpreting the QTA, reference to
state property law is appropriate "if that law is not hostile to
federal interests." <u>Mafrige v. U.S.</u>, 893 F. Supp. 691, 697 (S.D.
Tex. 1995); <u>see also</u> <u>Vincent Murphy Chevrolet Co., Inc. v. U.S.</u>,
766 F.2d 449, 451 (10th Cir. 1985) (stating that interpretation
of the QTA must be in accordance with principles of federal law,
but that federal courts can "look to state law as an aid in
determining the application of statutory language to specific
facts"); <u>Kinscherff v. U.S.</u>, 586 F.2d 159, 160 (10th Cir. 1978)
("It thus must be assumed that Congress intended to permit to be
brought against the United States the *typical quiet title suit,
as it has developed in the various states in this country through
statutory and case law*.") (emphasis added); H.R. REP. NO. 92-1559,
at 8, 4555 ("The State law of real property would of course apply
to decide all questions not covered by Federal law.").

Looking to quiet title statutes as developed in the several
states, it is common that a petitioner under such a statute may
"secure a relatively conclusive adjudication of the rights of all
persons—known or unknown, living or dead—who either potentially

or actually claim an adverse right, title or interest in property."  Enhancing the Marketability of Land:  The Suit to Quiet Title, 68 YALE L.J. 1245, 1269 (1959).  There are state statutes that are broadly worded to allow persons claiming title to real property to join as defendants parties who have not formally asserted their rights, or who have less-than-concrete interests at stake.  See, e.g., CONN. GEN. STAT. ANN. § 47-31 (Connecticut, allowing suit against "any person who may claim" an interest, even if the claim is contingent); N.H. REV. STAT. § 498:5-a (New Hampshire, allowing suit against any person "who may claim" an interest and "to clear up all doubts and disputes" regarding the property); HAW. REV. STAT. § 669-1 (Hawaii, allowing an action against any person "who may claim adversely to the plaintiff"); IND. CODE 32-30-3-14 (Indiana, allowing an action against a person "who may have an interest in real estate" if the person's "name appears of record in a record concerning the real estate").  Similarly, a "cloud on title" is sufficient to invoke the federal QTA.  Spirit Lake Tribe v. North Dakota, 262 F.3d 732, 738 (8th Cir. 2001) ("Further, the government's interest 'need not amount to full legal title . . . . As long as the interest claimed is a "cloud on title," or a reasonable claim with a substantial basis, it constitutes a "claim"'" that

18

triggers the QTA's statute of limitations).

Finally, whether the plaintiff has actually invoked the QTA is determined from the face of the complaint.  See Hart v. Bayer Corp., 199 F.3d 239, 243-44 (5th Cir. 2000) (finding that, generally, questions concerning federal question jurisdiction are resolved by looking to how plaintiff has pleaded in his complaint).  This is an important inquiry because nowhere in the underlying petition is there an explicit reference to the Quiet Title Act.  However, the Court finds that Plaintiffs have pled QTA jurisdiction.  The petition sets forth allegations of how the Corps actively sought to obtain the right of entry granted by the OLD.  Rec. Doc. 1-1 (hereinafter, "Complaint"), at 4, ¶ 11; at 10, ¶ 28 (stating that the project sponsor would be asked to provide a right of entry).  In other words, Plaintiffs allege that the OLD claims a servitude, the Corps sought access from the OLD, and thus the Corps was seeking to obtain a right of entry based on a disputed real right.  They allege that the Corps has asserted this interest through "restricting Plaintiffs' access to their property, and ha[s] even placed 'No Trespassing' signs to enforce restrictions on any use whatsoever of Plaintiffs'

property." <u>Id.</u> at 13, ¶ 37.[4]  They expressly seek a declaration

that the Corps does not have the rights it claims.[5]  They have

alleged a dispute between themselves and the Corps as to real

property in which the Corps claims an interest, albeit derived

from the putative OLD servitude.

The Court finds that the Corps is "claiming an interest" in

property within the meaning of the QTA because the statute's

purpose is to allow landowners like Plaintiffs to seek to remove

a cloud on their title, even where the Corps claims its right of

entry from a levee district.

### c. Absence of Jurisdiction Over Takings Claims

In their opposition, Plaintiffs assert that they have not

alleged that the Corps is responsible for a taking, and that

therefore the Court of Federal Claims has no jurisdiction, as the

---

[4] <u>See</u> <u>also</u> Complaint, at 13, ¶ 39 ("Defendants claim that they have a
right to enter the property for the same reasons they asserted in 2008."); <u>id.</u>
at 18, ¶ 62 (alleging that "[t]he Defendants have previously argued that they
have acquired levee servitudes of the type at issue herein" as a result of the
<u>St. Julien</u> doctrine).

[5] <u>See</u> Complaint, at 17, ¶ 58 ("Upon information and belief, Plaintiffs
assert that the Defendants never acquired any levee servitude of the type they
claim herein from Plaintiffs or Plaintiffs' ancestors-in-title, either through
the acquisition of a conventional servitude or the expropriation of such a
servitude and the payment of just compensation."); <u>id.</u> at 18-20, ¶¶ 61-67
(Count Four, seeking a declaration of extinction of the servitude due to non-
use); <u>id.</u> at 20-22, ¶¶ 68-79 (Count Five, seeking a declaration of
inapplicability of the <u>St. Julien</u> doctrine); <u>id.</u> at 22, ¶ 77 (seeking
declaratory judgment as to the precise extent of alleged servitude); <u>id.</u> at
22, ¶ 79 (seeking "declaratory judgment that Defendants do not have a
servitude over their property").

Corps claims it does.  However, Plaintiffs in their petition seek from the OLD and the Corps "damages for the taking of their property without just compensation in violation of the Louisiana Constitution," Complaint, at 2, ¶ 3, and allege entitlement to damages due to Defendants' "effectively taking the property out of commerce." Id. at 17, ¶ 54.  Therefore, there *are* takings claims alleged against the Corps.[6]

To the extent that Plaintiffs assert Fifth Amendment takings claims against the Corps that are in excess of $10,000, clearly the Tucker Act does not provide this Court with jurisdiction. Amoco Production Co. v. Hodel, 815 F.2d 352, 368 (5th Cir. 1987) (finding that for claim against the United States for monetary relief in excess of $10,000, claim had to be brought within the Claims Court, which has exclusive jurisdiction).  However, the QTA provides that if the plaintiff prevails in the quiet title action, the United States may retain possession of the property by payment of just compensation as determined by the district court in the same action.  28 U.S.C. § 2409a(b).  In LaFarque v. U.S., 4 F. Supp. 2d 580 (E.D. La. April 8, 1998), the court distinguished the Tucker Act and the QTA:

---

[6] Undoubtedly, part of the impetus for such claims against not just the OLD, but also the Corps, was the joinder in state court of the Corps as a necessary and indispensable party.

> There is a clear distinction between a claim brought
> under the QTA and one based upon the Tucker Act: a
> takings claim under the Tucker Act concedes the
> government's ownership and seeks to obtain just
> compensation for the landowner, while a quiet title
> claim under the QTA disputes ownership and provides the
> landowner with a declaration of title and recovery of
> the land.

Id. at 586.   In LaFargue, where the plaintiffs sought a

declaration of ownership and alternative monetary relief, they

implicitly invoked the QTA provision that permits the Government

"to choose between purchasing the right of possession and ceasing

to occupy the land."  Id. at 587.   Further, where plaintiffs had

sued for compensation as a result of plaintiffs' present

ownership, not as damages for a prior taking, there was no Tucker

Act claim.  Id. at 588.

As previously discussed, Plaintiffs have sued both for

damages resulting from the Corps's activities, and for a

declaration that the OLD and the Corps do not have a servitude.[7]

As the LaFargue court recognized, the QTA expressly contemplates

such a situation:  where there is a determination in a QTA action

that the United States does *not* have the interest claimed, it may

---

[7] See Complaint, at 9, ¶ 23 ("Even if Defendants did possess such a
servitude, they would nevertheless be required to pay just compensation for
the exercise of any alleged rights of entry"); id. at 24-25 (in prayer for
relief, seeking damages and declaration that no servitude exists).  Counts 1-3
seek damages, and Counts 4-6 seek a declaration that no servitude exists, or
that it does not exist to the extent claimed by Defendants.

retain possession of the property by paying just compensation to the landowner.  28 U.S.C. § 2409a(b).  Thus in the present case, Plaintiffs may press forward their claim that the Corps does not have any right, via servitude or otherwise, to enter the properties; and if they prevail, seek just compensation in the same action.  See id.  The district court may "resolve the complete matter in one proceeding," without regard to whether the value of the claims exceeds $10,000.  H.R. REP. NO. 92-1559, at 5, 4552.[8]

The Court finds that the petition does not invoke the Tucker Act.  As pleaded, the case is not one seeking just compensation "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department . . . ."  28 U.S.C. § 1346(a)(2).  Counts 1 and 2 allege damages from preparatory construction work and actual construction work.  Count 3 requests disparate treatment damages under state law.  Plaintiffs also invoke Louisiana Revised Statutes section 13:5111, which only applies to state parties defendant.  Parts of the petition refer to "just compensation," but they do not expressly seek

---

[8] The legislative history to the QTA acknowledges that even without the QTA, it is possible under the Tucker Act, 28 U.S.C. § 1346, for a landowner to sue the Government for a taking.  The difference, then, in the Tucker Act and QTA remedies is that the $10,000 jurisdictional amount in the Tucker Act does not apply to the QTA.  H.R. REP NO. 92-1559, at 5, 4552.

compensation for a taking in violation of the U.S. Constitution, as is required by the Tucker Act.  See 28 U.S.C. § 1346(a)(2) (providing the district courts with jurisdiction over claims against the United States not exceeding $10,000, founded upon, among other things, the Constitution or other federal law).[9] Rather, the takings claims are brought under the Louisiana Constitution.  Complaint, at 2, ¶ 3.  As in LaFargue, Plaintiffs request compensation from the Corps as a result of their alleged present ownership, not as damages for a prior taking.  Therefore, the Court holds that jurisdiction is proper under the QTA, not the Tucker Act.

Although there is QTA jurisdiction, the Court holds that to the extent Plaintiffs claim a Fifth Amendment taking by the Corps, which does not appear to be the case, such claims are dismissed because there is no subject matter jurisdiction under the Tucker Act.  Additionally, there is no subject matter jurisdiction over the state constitutional takings claims.  For the Corps to be amenable to suit as to such claims, there would have to be a pertinent waiver of sovereign immunity.  There is none.  See Olivier Plantation, LLC v. St. Bernard Parish, 744 F.

_____

[9] The petition does allege takings under the Louisiana Constitution. If, however, federal constitutional takings claims are pleaded under Tucker Act jurisdiction, they are dismissed if they are worth more than $10,000.

24

Supp. 2d 575, 584-85 (E.D. La. Sept. 24, 2010) ("In the present
matter, a determination of whether the Defendants' actions
constituted a taking under the Louisiana Constitution does not
implicate any issues of federal law, and thus, does not provide a
basis for this Court to exercise federal subject matter
jurisdiction."). Therefore, the Court dismisses the state
constitutional takings claims against the Corps.

### 2. Jurisdiction as to Remaining Claims

#### a. State Law Trespass Claims

Plaintiffs' state law trespass claims against the Corps are
within the scope of Louisiana tort law. <u>Bennett v. Louisiana
Pacific Corp.</u>, 693 So. 2d 1319, 1321 (La. App. 2d Cir. 1997)
("Trespass is clearly an action in tort backed by statutory
law."). As such, the FTCA is applicable. The FTCA constitutes a
limited waiver of sovereign immunity. <u>See</u> <u>Ali v. Fed. Bureau of
Prisons</u>, 552 U.S. 214, 217-18 (2008) (stating that the FTCA
waives "the United States' sovereign immunity for claims arising
out of torts committed by federal employees"); <u>United States v.
Orleans</u>, 425 U.S. 807, 813 (1976) ("The Federal Tort Claims Act
is a limited waiver of sovereign immunity, making the Federal
Government liable to the same extent as a private party for
certain torts of federal employees acting within the scope of

25

their employment.").

However, the FTCA requires that before a claim can be brought against the United States for money damages, the claimant must first present his claim to the appropriate federal agency and must have received a final denial by the agency in writing. 28 U.S.C. § 2675(a). Plaintiffs' trespass claims against the Corps must be dismissed because Plaintiffs have failed to present their claims to the appropriate federal agency, thereby failing to come within the scope of the United States' waiver of sovereign immunity. See Porter v. Hirsch, 345 F. Supp. 2d 400, 403 (S.D.N.Y. 2004) (granting the United States' motion to dismiss for lack of subject matter jurisdiction where the plaintiffs failed to exhaust their administrative remedies under the FTCA).

Further, there is no supplemental jurisdiction over Plaintiffs' state law trespass claims against the Corps. Failure to meet the exhaustion requirement prevents the district court from exercising jurisdiction over FTCA claims. The supplemental jurisdiction statute is not a waiver of sovereign immunity. San Juan County, Utah v. U.S., 503 F.3d 1163, 1181 (10th Cir. 2007); U.S. v. Certain Land Situated in City of Detroit, 361 F.3d 305, 307 (6th Cir. 2004); Wilkerson v. U.S., 67 F.3d 112, 119 n.13

(5th Cir. 1995).  Due to Plaintiffs' failure to exhaust administrative remedies, Plaintiffs' trespass and other state law tort claims against the Corps must be dismissed.

### b.  Request for Declaratory Judgment

To the extent the underlying petition requests declaratory judgment, this Court has jurisdiction.  In the petition, Plaintiffs request a declaration that there is no St. Julien servitude (Count Four), and a declaration of the unconstitutionality of the St. Julien doctrine as applied to the case at bar (Count Six).  The Declaratory Judgment Act ("DJA") provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  This statute does not establish an independent jurisdictional basis, but establishes a separate remedy where jurisdiction otherwise exists.  Seibert v. Baptist, 594 F.2d 423, 428 (5th Cir. 1979).  Independent jurisdiction exists under the QTA over the claims against the Corps, and thus the DJA permits this Court to declare the rights of Plaintiffs relating to the quieting of title.  Whether a St. Julien

servitude exists, its extent if one does exist, and the constitutionality of such a servitude in the present case are all issues that the Court may decide in declaring the parties' legal relations.

**B.  *Res Judicata* and "Law of the Case"**

The Court has largely addressed *res judicata* and "law of the case" issues in its Order and Reasons denying the OLD's motion to dismiss.  Rec. Doc. 31.  This Court held that this case is not *res judicata* because there is no "second suit."  <u>See</u> LA. REV. STAT. ANN. § 13:4231 (requiring the existence of a "subsequent action"); <u>Id.</u> cmt. a (requiring the existence of a "second action").  The Court held that because this case is not a lawsuit subsequent to the suit in which the underlying Louisiana Fourth Circuit decision was rendered, *res judicata* is not an available defense:

> This case has its genesis in Louisiana Civil District Court.  Initially, Case Number 08-6979 (the Demolition Suit) involved a motion for summary judgment granted by the trial court, but the Louisiana Fourth Circuit reversed and remanded.  The second case, Case Number 11-0097 (the Deep Soil Mixing Suit), was filed, and both cases were consolidated.  Before this consolidated case could be disposed of, it was removed to this Court.  The mere fact that the litigation is now within a different court system does not mean that there is a subsequent suit.

Rec. Doc. 31, at 12.  The major difference presented by the

Corps's procedural stance is that the Corps was not a party to the Louisiana Fourth Circuit decision rendered in the Demolition Suit, which was rendered before the Demolition and Deep Soil Mixing Suits were consolidated in state court.  If anything, this removes another element necessary to a finding of *res judicata*: "the cause or causes of action asserted in the second suit [must have] existed at the time of final judgment in the first litigation." Burquieres v. Pollingue, 843 So. 2d 1049, 1053 (La. 2003).  At the time of the Fourth Circuit decision in 2009, the Corps's actions that would become the subject of the Deep Soil Mixing Suit had not yet occurred.  Because there is no second suit, and because there are new causes of action asserted that were not present at the time of the earlier judicial decision, the Court holds that the defense of *res judicata* is meritless.

As to the "law of the case" doctrine, the Court in its Order and Reasons denying the OLD's motion to dismiss stated that "application of the law of the case doctrine to cases, like the present one, that move from state court to federal court via removal has seen mixed results," but ultimately decided "not to apply the discretionary law of the case doctrine." Rec. Doc. 31, at 14-15.  Because the earlier state court decision did not include all of the facts presently before the Court (those posed

by the Deep Soil Mixing Suit), and because the Corps was not a party to the case at the time of the earlier judicial decision, the Court holds that the law of the case doctrine does not apply.

## C.  Standing

The Corps also argues that Plaintiffs lack standing because the "injury-in-fact" element is lacking, in that the alleged takings occurred prior to the Plaintiffs' ownership of the properties on Bellaire Drive.  However, the standing inquiry at the pleading stage is resolved by resort to the Plaintiffs' factual allegations.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'").

As this Court previously held in its Order and Reasons denying the OLD's motion to dismiss, there is insufficient evidence of a St. Julien servitude at this stage of the litigation.  Rec. Doc. 31, at 27.  Because no St. Julien servitude has been demonstrated, there can be no legal conclusion that these Plaintiffs are foreclosed from suing for compensation on the grounds that the right to sue was personal to

30

the original owners at the time of the alleged servitude creation.  Additionally, as to the requests for declaratory judgment and injunction, to the extent Plaintiffs are owners of the properties at issue, they clearly allege a particularized injury.  Therefore, Plaintiffs have standing to pursue their claims against the Corps.

### CONCLUSION

The Court holds that Plaintiffs have standing to sue the Corps, and that neither *res judicata* nor the "law of the case" doctrine bars the instant lawsuit.  There is QTA jurisdiction over Plaintiffs' claims for a declaration as to property rights vis-a-vis the Corps.  However, the Court lacks jurisdiction over the federal constitutional (if any) and state constitutional takings claims, trespass claims, and any remaining state law tort claims.

For the foregoing reasons, **IT IS ORDERED** that the **USA's Motion to Dismiss (Rec. Doc. 18)** be **GRANTED in part** and **DENIED in part**, as follows:

1.  Defendant USA's motion to dismiss for lack of subject matter jurisdiction is **DENIED**.

2.  Plaintiffs' state law trespass and other state law tort claims against the USA, federal constitutional takings claims (to

the extent there are any) against the USA, and state constitutional takings claims against the USA are **DISMISSED** for lack of subject matter jurisdiction.

3.   The Court is of the opinion that the above Order and Reasons finding jurisdiction under the Quiet Title Act involves a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal from the order may materially advance the ultimate termination of the litigation.   28 U.S.C. § 1292(b).   Accordingly, the parties may apply to the Fifth Circuit Court of Appeals for an appeal of this interlocutory order, pursuant to 28 U.S.C. § 1292(b), within ten days from the date of entry of this Order and Reasons.   If such application is timely made, these proceedings are stayed pending the outcome of the appeal.   If such application is not timely made, the case will proceed without a stay.

New Orleans, Louisiana this 27th day of September, 2011.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE