# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED JUN 20 2013
WILLIAM W. BLEVINS
CLERK

United States Court of Appeals
Fifth Circuit
**FILED**
April 25, 2013

No. 12-30425

Lyle W. Cayce
Clerk

D.C. Docket No. 2:11-CV-357
D.C. Docket No. 2:11-CV-366

TERRY LONATRO; NIDA LONATRO; CRAIG BERTHOLD; CINDY BERTHOLD; DANTE MARALDO; MONIQUE MARALDO; AMY SINS; GEORGE SINS; ALBERT ZUNIGA; KATHLEEN ZUNIGA; ROY ARRIGO; TAMMY ARRIGO,

    Plaintiffs - Appellees

v.

UNITED STATES OF AMERICA,

    Defendant - Appellant

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before KING, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

## JUDGMENT

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is reversed, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

ISSUED AS MANDATE: 18 JUN 2013

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
    Deputy

New Orleans, Louisiana    18 JUN 2013

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
April 25, 2013

Lyle W. Cayce
Clerk

No. 12-30425

TERRY LONATRO; NIDA LONATRO; CRAIG BERTHOLD; CINDY BERTHOLD; DANTE MARALDO; MONIQUE MARALDO; AMY SINS; GEORGE SINS; ALBERT ZUNIGA; KATHLEEN ZUNIGA; ROY ARRIGO; TAMMY ARRIGO,

          Plaintiffs - Appellees

v.

UNITED STATES OF AMERICA,

          Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The district court concluded that it had subject matter jurisdiction over this action pursuant the Quiet Title Act, 28 U.S.C. § 2409a ("QTA"). We disagree and reverse.

## I.

Plaintiffs own and reside on property in Orleans Parish, Louisiana that is "immediately adjacent to and/or abutting the levee surrounding the 17th Street Canal." Following Hurricane Katrina, Congress authorized the United States Army Corps of Engineers ("Corps") to repair and strengthen the levees in

southeastern Louisiana.[1] The Corps, in cooperation with the Orleans Levee District ("Levee District"), a unit of the Southeastern Flood Protection Agency-East ("Flood Protection Agency"), announced plans to prepare an area, including the plaintiffs' properties, for levee improvements by removing fences, trees, and other items from portions of the land that were abutting against or part of the levee. The Levee District, claiming that Louisiana law furnished it with a servitude over the levees and surrounding property, granted the Corps a right-of-entry to perform the removal activities.

Before the removal activities began, the plaintiffs filed a class action suit in Louisiana state court against the Levee District and Flood Protection Agency. They alleged state law claims and sought a temporary restraining order, permanent injunctive relief, and damages for appropriation of their property. Their petition challenged the existence and constitutionality of the purported state-law servitude. On July 6, 2008, the state court denied the plaintiffs' request for a temporary restraining order, and the Corps commenced work on the plaintiffs' land. The plaintiffs and defendants then filed cross motions for summary judgment, disputing whether the Levee District held a legal servitude over the plaintiffs' properties. On June 3, 2009, the state court granted partial summary judgment in favor of the plaintiffs and denied the defendants' motion, finding that Louisiana law did not grant the property rights asserted by the Levee District. On September 14, 2009, the state appellate court reversed and remanded, concluding that the plaintiffs owned their property subject to a valid servitude in favor of the local levee authorities.[2] On March 12, 2010, the Louisiana Supreme Court denied the plaintiffs' application for further review.

---

[1] *See* Pub. L. 109-148, 119 Stat. 2680 (Dec. 30, 2005); Pub. L. 109-234, 120 Stat. 418 (June 15, 2006).

[2] On remand, the state trial judge did not act and never signed a judgment.

2

On January 5, 2011, the landowners initiated a second state court suit against the Levee District and Flood Protection Agency. The landowners had learned that the Levee District had granted the Corps another right-of-entry to perform extensive work on and around their property, including (1) engaging in "deep soil mixing," a process that uses a giant mixer inserted up to 80 feet into the ground, and (2) building new subsurface and embankment walls. The plaintiffs sought injunctive relief to prevent the defendants from entering onto their property and from conducting the construction activities. On January 14, 2011, the state court concluded that it was bound by the Louisiana Court of Appeal's decision recognizing that the Levee District held a valid servitude over the plaintiffs' property. The state court denied the plaintiffs' motion for injunctive relief, granted the defendants' exception for failure to join the Corps as a necessary party, and granted the plaintiffs leave to file an amended petition to name the Corps as an additional defendant.

On February 10, 2011, the plaintiffs filed an amended petition, joining the Corps as a defendant. In their amended petition, the plaintiffs sought a declaratory judgment that the defendants did not possess a servitude over their property, or alternatively, a declaration that the servitude (1) had been abandoned and extinguished by virtue of non-use or (2) did not permit the types of activities the defendants were performing or planning to perform. In addition, the plaintiffs sought compensation for damage to their property caused by (1) the preparation for improvements and (2) the construction, destruction, and removal activities.

Shortly thereafter, the Corps removed the case to federal district court pursuant to 28 U.S.C. §§ 1442(a), 1442(a)(1), and 1442(b). The Corps then moved to dismiss on multiple grounds.[3] On September 27, 2011, the district court granted in part and denied in part the Corps's motion to dismiss. The

---

[3] The Levee District and Flood Protection Agency also filed motions to dismiss, which are not at issue in this appeal.

district court concluded that (1) "neither *res judicata* nor the 'law of the case' doctrine bars the instant suit"; (2) it "lack[ed] jurisdiction over the federal constitutional (if any) and state constitutional takings claims, trespass claims, and any remaining state law tort claims"; and (3) pursuant to the QTA it had jurisdiction "over the Plaintiffs' claims for a declaration as to property rights vis-a-vis the Corps." The district court *sua sponte* certified for interlocutory review its order finding jurisdiction under the QTA.[4] The Corps filed a motion for reconsideration on October 25, 2011, which the district court classified as a motion to alter or amend the judgment and denied on December 19, 2011. On February 28, 2012, the district court recertified its orders for interlocutory review. On April 24, 2012, this Court granted the United States' petition for permission to appeal pursuant to 28 U.S.C. § 1292(b) and Fed. R. App. P. 5(b). Because the plaintiffs did not cross-appeal, the only issue before this Court is whether the plaintiffs' action against the Corps falls within the scope of the QTA so as to waive the United States' immunity to suit and authorize federal subject matter jurisdiction.

## II.

We review *de novo* a district court's ruling on a motion to dismiss for lack of subject matter jurisdiction,[5] but we "review the district court's jurisdictional findings of fact for clear error."[6]

---

[4] *See* 28 U.S.C. § 1292(b).

[5] *In re Eckstein Marine Service L.L.C.*, 672 F.3d 310, 314 (5th Cir. 2012).

[6] *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005).

4

## III.

"The United States, as sovereign, is immune from suit save as it consents to be sued."[7] Hence, consent to be sued or a waiver of sovereign immunity "is a prerequisite for jurisdiction,"[8] and "the terms of [the United States'] consent to be sued . . . define [the] court's jurisdiction to entertain the suit."[9] The plaintiffs claim that the QTA waives the United States' sovereign immunity from this suit and furnishes a basis for federal subject matter jurisdiction.[10] Although it has been clearly established that the QTA waives the sovereign immunity "subject to certain exceptions . . . in civil actions to adjudicate title disputes involving real property in which the United States claims an interest,"[11] the Government argues that the federal courts lack subject matter jurisdiction over this action because it falls outside the scope of the QTA's waiver of sovereign immunity.

"[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied."[12] Section 2409a(a), by its plain language, imposes two explicit conditions on the United States' waiver of sovereign immunity—(1) the action must be one "to adjudicate a disputed title to real property" (2) "in which the United States claims an interest." We do not consider whether the second condition is satisfied here because we conclude that this action is not one "to adjudicate a disputed title to real property" within the meaning of the QTA.

---

[7] *United States v. Sherwood*, 312 U.S. 584, 586 (1941).

[8] *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

[9] *Sherwood*, 312 U.S. at 586.

[10] *See* 28 U.S.C. § 1346(f); 28 U.S.C. § 2409a(a).

[11] *Block v. North Dakota ex. rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 275–76 (1983); *see* 28 U.S.C. § 2409a.

[12] *Soriano v. United States*, 352 U.S. 270, 276 (1957).

The title dispute underlying this action is not between the plaintiffs and the United States; rather, any liability on the part of the United States depends entirely on an adjudication of the validity of the servitude claimed by the Levee District. We read the QTA as requiring that the title dispute must be between the plaintiff—an adverse claimant—and the United States. That condition is not satisfied here because the dispositive title dispute in this case—the validity of the servitude—is a title dispute between the plaintiffs and a third party, not between the plaintiffs and the United States.

Our reading of the QTA is compelled by the Supreme Court's decision last Term in *Federal Aviation Administration v. Cooper*.[13] In *Cooper*, the Court explained that the scope of a waiver of sovereign immunity must "be clearly discernable from the statutory text in light of traditional interpretative tools;" if it is not, then a court should "take the interpretation most favorable to the Government."[14] The issue presented in *Cooper* was whether the term "actual damages" in the civil remedies provision of the Privacy Act includes compensation for mental and emotional harm. The Government urged that the civil remedies provision did not waive the United States' sovereign immunity with respect to such recovery. The Supreme Court considered the particular context in which the term appears in the Act and prior versions of the bill, both of which suggested that Congress intended the term "actual damages" in the Act to mean "special damages." The Court thus interpreted "actual damages" as meaning "special damages." It explained that although "the contrary reading advanced . . . by respondent is [not] inconceivable," it was required to adopt the limited interpretation urged by the Government:

> [B]ecause the Privacy Act waives the Federal Government's sovereign immunity, the question we must answer is whether it is plausible to read the statute, as the Government does, to authorize

---

[13] 132 S. Ct. 1441 (2012).

[14] *Id.* at 1448.

6

only damages for economic loss. When waiving the Government's sovereign immunity, Congress must speak unequivocally. Here, we conclude that it did not. As a consequence, we adopt an interpretation of "actual damages" limited to proven pecuniary or economic harm. To do otherwise would expand the scope of Congress' sovereign immunity to waiver beyond what the statutory text clearly requires.[15]

Under *Cooper*, the question we must answer to determine the scope of a waiver of sovereign immunity is "whether it is plausible" to read the waiver in the manner urged by the Government.[16] Here, as in *Cooper*, the reading of the statute advanced by the plaintiffs is not "inconceivable." But for the reasons set forth below, "it is plausible" to read the QTA as only waiving sovereign immunity when the underlying title dispute the plaintiff seeks to resolve is between the plaintiff and the United States.

The QTA, by its own terms, suggests that it only applies to such an action. Section 2409a(e) provides that the jurisdiction of the district court shall cease "[i]f the United States disclaims all interest in the real property or interest therein *adverse to the plaintiff.*"[17] That provision indicates that QTA jurisdiction is premised on adversity between the plaintiff and the United States.

The House Report accompanying the QTA also supports our interpretation. The plaintiffs cite a letter from the Attorney General included in the House Report and argue that the letter shows that Congress intended the QTA to apply to actions like this one. In that letter, the Attorney General explained:

> If the United States were in possession under a lease, and the title of the Government's lessor were adjudicated to be invalid, the United States could elect to continue its lease with the true owner. If the United States were adjudged to be occupying without title, it

---

[15] *Id.* at 1453 (citations omitted).

[16] *Id.*

[17] 28 U.S.C. § 2409a(e) (emphasis added).

7

is only fair to require it to choose between acquiring the right of possession and ceasing to occupy.[18]

But that example does not "unequivocally" indicate that Congress intended the QTA to allow a plaintiff to initiate suit against the United States to adjudicate a third party's claim to the plaintiff's property.[19] The example only speaks to what happens *after* the third party's title is adjudicated as invalid. It does not suggest that the federal courts would have jurisdiction to adjudicate the initial title dispute between the plaintiff and the third party. In other words, that example does not suggest that a plaintiff could file suit against the United States when its claim against the United States depends *entirely* on a title dispute with a third party. The legislative history not only fails to provide a clear indication that Congress intended the QTA to apply to such an action, but it actually supports a contrary reading. The House Report referenced the common law history of quiet title actions, which sought "to quiet title or to remove a cloud on title," and explained that "[p]erhaps the most common application of the proposed statute would be in boundary disputes *between the United States and owners of adjacent property*."[20]

In light of both § 2409a(e) and the QTA's legislative history, we find that "it is plausible" to read the QTA, as the Government urges, to only authorize suits in which the dispositive title dispute the plaintiff seeks to adjudicate is between the plaintiff and the United States.[21] Therefore, we conclude that this

---

[18] H.R. REP. NO. 92-1559, 1972 U.S.C.C.A.N. 4547, 4555 (1972).

[19] *See Cooper*, 132 S. Ct. at 1456 ("In sum, applying traditional rules of construction, we hold that the Privacy Act does not unequivocally authorize an award of damages for mental and emotional distress. Accordingly, the Act does not waive the Federal Government's sovereign immunity from liability for such harms.").

[20] H.R. REP. NO. 92-1559, 1972 U.S.C.C.A.N. 4547, 4551, 4554 (1972).

[21] We are aware of language in *Key v. Wise* which could be read to suggest that the Quiet Title Act applies even when the dispositive title dispute is between the plaintiff and a third party. 629 F.2d 1049, 1058 (5th Cir. 1980). However, the *Key* panel made clear that it

8

action falls outside the scope of the QTA's waiver. That conclusion is supported by decisions of other Circuits.[22] We also find support for our reading in the Supreme Court's recent decision in *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*.[23] In that case, the Secretary of the Interior had acquired land in trust for an Indian tribe seeking to open a casino. Patchak filed suit under the Administrative Procedure Act ("APA") arguing that the Secretary lacked authority to acquire the property. The APA's waiver of sovereign immunity does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought,"[24] and the Government argued that the QTA's exception, making its authorization of suit inapplicable to "trust or restricted Indian lands,"[25] "satisfies the APA carve-out and so forbids Patchak's suit."[26] The Supreme Court concluded that because the QTA, and in turn its exception, did not apply to Patchak's action, his action "[fell] within the APA's general waiver of sovereign immunity."[27] The Court held that the QTA only applies when the plaintiff asserts her own right in the disputed property, "repeat[ing]" that the QTA only applies to suits by "adverse claimants, meaning

---

was "express[ing] no view" on whether § 2409a applied to the action. *Id.* at 1060. Instead, it confined its review to the question of whether the district court had jurisdiction to review a final state court decision on an issue of controlling state law, over which it determined the district court had no jurisdiction.

[22] *See, e.g., Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1192 (9th Cir. 1999); *McMaster v. United States*, 177 F.3d 936, 939–40 (11th Cir. 1999); *Cadorette v. United States*, 988 F.2d 215, 223 (1st Cir. 1993). *Leisnoi*'s holding that "a third party's claim of an interest of the United States can suffice if it clouds the plaintiff's title" is inapplicable here because the Levee District asserts its own title interest; it is not asserting a title interest on behalf of the United States. 170 F.3d at 1192.

[23] 132 S. Ct. 2199 (2012).

[24] 5 U.S.C. § 702.

[25] 28 U.S.C. § 2409a(a).

[26] *Patchak*, 132 S. Ct. at 2205.

[27] *Id.* at 2210.

9

plaintiffs who themselves assert a claim to property antagonistic to the Federal Government's."[28] *Patchak*'s emphasis on "adverse claimants" supports our view that the QTA requires adversity—that the underlying title dispute must be between the plaintiff and the United States.[29]

## IV.

In sum, because the title dispute here concerns ownership of the purported servitude—a title dispute between the plaintiffs and a third party—and because it is plausible to read the QTA as only authorizing suit when the underlying title dispute is between the plaintiff and the United States, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

---

[28] *Id.* at 2207 (internal quotations omitted).

[29] *See also Block*, 461 U.S. at 286 (holding that "Congress intended the QTA to provide the exclusive means by which *adverse claimants* could challenge the United States' title to real property (emphasis added)).

10

# United States Court of Appeals
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

June 18, 2013

Mr. William W. Blevins
U.S. District Court, Eastern District of Louisiana
500 Poydras Street
Room C-151
New Orleans, LA 70130

No. 12-30425,    Terry Lonatro, et al v. Orleans Levee District
         USDC No. 2:11-CV-357
         USDC No. 2:11-CV-366

Enclosed, for the district court only, is a copy of the judgment issued as the mandate and a copy of the court's opinion.

Record/original papers/exhibits to be returned.

Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Dawn D. Victoriano, Deputy Clerk
504-310-7717

cc: (letter only)
    Honorable Carl J. Barbier
    Mr. William Brandt Lazarus
    Ms. Elizabeth Ann Peterson
    Mr. Glenn Kenneth Schreiber
    Mr. Randall Alan Smith

P.S. to Judge Barbier:  A copy of the opinion was sent to your office via email the day it was filed.